UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES T. EASLEY, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 1:22-cv-00205-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Kilolo Kijakazi, Commissioner of Social Security*, | ) ) ) ) ) |
|     Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff James T. Easley appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

Easley applied for DIB and SSI on February 20, 2020, alleging disability as of January 1, 2019. (ECF 13 Administrative Record ("AR") 24, 206-13).[2] Easley is insured for DIB through June 30, 2025 (AR 26), and thus with respect to his DIB application, he must establish that he is disabled before that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997)

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

[2] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files his SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Easley could be eligible to receive SSI is March 2020, given that he applied for SSI in February 2020.

(explaining that a claimant must establish that he was disabled by his date last insured in order to recover DIB). Easley's claim was denied initially and upon reconsideration. (AR 69, 80, 91, 103). On July 26, 2021, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing (AR 41-68), and on August 10, 2021, rendered an unfavorable decision to Easley, concluding that he was not disabled because, despite the limitations caused by his impairments, he could perform a significant number of unskilled, medium-exertional jobs in the national economy (AR 21-36). The Appeals Council denied Easley's request for review (AR 5-9), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

As of the ALJ's decision, Easley was forty-one years old (AR 35, 206, 212); had a high school education and attended one year of college (AR 26, 233); and had past work experience as a machine operator, loader, construction worker, cleaner, and warehouse worker (AR 34, 63-64, 233). In his application, Easley alleged disability due to paranoia, schizophrenia, psychosis, depression, anxiety, diabetes, hypertension, sleep apnea, chronic gastroesophageal reflux disease (GERD), edema, stage 2 or 3 renal failure, and obesity. (AR 232).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not

supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is

incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the ALJ's August 10, 2021, decision, which became the final decision of the Commissioner, the ALJ observed at the outset that Easley is insured for DIB through June 30, 2025. (AR 26). At step one of the five-step analysis, the ALJ concluded that Easley had not engaged in substantial gainful activity since January 1, 2019, his alleged onset date. (*Id.*). At step two, the ALJ found the following severe impairments: diabetes mellitus, obesity, schizophrenia, and depressive disorder. (AR 27). At step three, the ALJ concluded that Easley did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ assigned Easley the following RFC:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following additional limitations: The claimant is able to climb and balance on an occasional basis. He should avoid unprotected heights and dangerous machinery with unprotected moving mechanical parts. He is able to perform work requiring simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

> through short demonstration, up to and including one month. He cannot perform work requiring a specific production rate, such as assembly line work. He is able to meet production requirements that allow a flexible and goal oriented pace. He is able to maintain the focus, persistence, concentration, pace and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. He is able to make only simple work-related decisions. He could respond appropriately to predictable, routine changes in the workplace. He could tolerate only brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations, but contact with supervisors still includes what is necessary for general instruction, task completion, or training. He could not perform tandem tasks.

(AR 29-30).

The ALJ determined at step four that given the foregoing RFC, Easley could not perform his past relevant work. (AR 34). However, at step five the ALJ found that Easley could perform a significant number of unskilled, medium-exertional jobs in the national economy, including production helper, assembler of metal furniture, and hand packager. (AR 35-36). Therefore, Easley's applications for DIB and SSI were denied. (AR 36).

### C. Step-Two Finding

Easley first challenges the ALJ's step-two conclusion that his foot pain was not a medically determinable impairment. For the following reasons, Easley's argument is persuasive.

"The Step [two] determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). As the ALJ stated, an impairment must be established by objective medical evidence from an acceptable medical source. *Gladney v. Saul*, 857 F. App'x 235, 238 (7th Cir. 2021); 20 C.F.R. §§ 404.1521, 416.921; (*see* AR 27). An ALJ "must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v.*

*Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant.").

At step two, the ALJ concluded Easley's diabetes mellitus, obesity, schizophrenia, and depressive disorder were severe impairments, and that any diagnosis or discussion of hyperlipidemia, GERD, obstructive sleep apnea, hypertrophy of nasal turbinates, seasonal allergies, thrush, asthma, Bell's palsy, and chronic kidney disease were non-severe impairments. (AR 27). As for Easley's foot pain, the ALJ stated that, although Easley alleged "unspecified" foot pain, this condition was "not addressed or diagnosed in the record," and as such she concluded that it was not a medically determinable impairment. (*Id.*).

The ALJ erred in her characterization of the record regarding Easley's foot pain allegations. Indeed, Easley offers medical record evidence showing that his allegations of foot pain were addressed and diagnosed. He first points to medical notes authored by his treating physician, Kanika Jaggi, M.D., spanning August 2019 to December 2020, in which he is assigned "daily foot care." (AR 509, 514, 521, 530, 713, 715, 718, 722, 723). Easley also shows that Dr. Jaggi eventually referred him to a podiatrist, Richard M. Hilker, D.P.M. (AR 556), whom Easley visited twice (AR 546, 549). At his two consultations with Dr. Hilker, Easley exhibited several foot problems, namely, thickened, discolored, and painful toenails, a condition which Easley reported interfering with his normal functions, and which worsened with ambulation. (AR 546, 549). During each visit, Dr. Hilker diagnosed Easley with type 2 diabetes *with neuropathy*, onychauxis, toe pain, hammer toes, and tinea pedis. (AR 547, 550).

Despite the existence of medical evidence spanning over a year showing Easley required foot care, in addition to several foot-pain diagnoses made by an acceptable medical source,[4] the ALJ concluded that Easley's symptoms were "unspecified" and not addressed nor diagnosed in the record. This was an error. "It would have been possible for the ALJ to decide, at least given the medical evidence available to [her] at the time of the hearing, that [Easley] presented *insufficient* evidence of [foot pain] impairment." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). "But in concluding that there was *no* such evidence, the ALJ actually *ignored* the available evidence and failed to explain [her] conclusion." *Id.* On this record, it is unclear whether the ALJ considered this evidence, and in turn, whether she overlooked it (or other evidence) in evaluating the existence of medically determinable impairments. Thus, she ignored an entire line of evidence that is contrary to her conclusion that Easley's foot pain was not addressed or diagnosed. *See Golembiewski*, 322 F.3d at 917.

It is true that "any error that an ALJ commits at step two is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)); *see also Arnett*, 676 F.3d at 591 ("An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." (citations omitted)). However, it is axiomatic that if a physical condition does not rise to the level of an impairment, the ALJ is not bound to consider it in her RFC assessment. SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *Thorpe v. Kijakazi*, No. 2:22-CV-013-JD-JEM, 2023 WL 2300514, at *6 (N.D. Ind. Feb. 28,

---

[4] "A licensed podiatrist is an acceptable medical source 'for purposes of establishing impairments of the foot, or foot and ankle only.'" *Tadros v. Astrue*, No. 10 C 7074, 2011 WL 3022302, at *10 (N.D. Ill. July 22, 2011) (citation omitted); *see* 20 C.F.R. §§ 404.1502(a)(4), 416.902(a)(4).

2023) ("[T]he ALJ does not consider non-medically determinable impairments when determining the RFC."). Put differently, the ALJ's elimination of foot pain at step two is not a harmless error because she "did not take into account *any* effects which the disorder might have on [Easley's] ability to maintain employment." *O'Connor-Spinner*, 832 F.3d at 697.[5] For example, while the ALJ concluded Easley's diabetes was a severe impairment, an impairment of diabetic neuropathy—as diagnosed by the podiatrist—could worsen Easley's condition and necessitate further restrictions in the RFC. *Craft v. Astrue*, 539 F.3d 668, 671 n.1 (7th Cir. 2008) ("Neuropathy is . . . a common complication of diabetes."). Additionally, any ongoing history of continuing foot problems could require additional limitations in Easley's ability to stand and walk. *See Michael E. v. Kijakazi*, No. 1:21-CV-03091-TWP-MG, 2023 WL 1971729, at *5 (S.D. Ind. Jan. 24, 2023), *R. & R. adopted sub nom. Eacret v. Kijakazi*, No. 1:21-CV-03091-TWP-MG, 2023 WL 1966221 (S.D. Ind. Feb. 13, 2023).

Consequently, the ALJ's mischaracterization of the record warrants remand of the ALJ's decision.[6] Upon remand, the ALJ should expressly consider the record pertaining to Easley's foot pain in determining his medically determinable impairments. To the extent the record does not support that foot pain is a medically determinable impairment, she should explain her reasoning.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and

---

[5] The ALJ did take into consideration Easley's testimony regarding his foot pain in her RFC assessment. (AR 31). However, she concluded that Easley's statements were inconsistent with the record. Additionally, the ALJ did not discuss Dr. Jaggi's notes regarding Easley's need for daily foot care nor Dr. Hilker's diagnoses in her RFC analysis. (AR 30-34).

[6] Because remand is required on this ground, the Court does not reach Easley's argument regarding the number of available jobs in the national economy. (*See* ECF 18 at 11-12).

Order. The Clerk is DIRECTED to enter a judgment in favor of Easley and against the Commissioner.

    SO ORDERED.

    Entered this 22nd day of September 2023.

    /s/ Susan Collins
    Susan Collins
    United States Magistrate Judge